lml

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHELE N. MOSS,              )
                                       )
               **Plaintiff,**     )
                                       )
     **vs.**                    )     **Case No. 06-4105-JAR**
                                       )
**BLUECROSS, BLUE SHIELD**     )
**OF KANSAS, INC.,**           )
                                       )
              **Defendant.**   )
_____)

## MEMORANDUM AND ORDER

Plaintiff Michelle N. Moss alleges claims under the Family and Medical Leave Act ("FMLA"), against her former employer, Blue Cross, Blue Shield of Kansas, Inc. ("Blue Cross"). Plaintiff asserts both interference and retaliation claims under 29 U.S.C. § 2615(a)(1) and (2). Plaintiff moves for summary judgment on her interference claim (Doc. 77). Defendant moves for summary judgment on both the interference and retaliation claims (Doc. 81). For the reasons explained in detail below, the Court denies both motions.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in

_____

[1]Fed. R. Civ. P. 56(c).

the light most favorable to the nonmoving party.[2]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[2]*Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[8]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein."[10]  "Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[11]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[13]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[14]

## II.    Statement of Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to plaintiff.  Plaintiff is a former employee of Blue Cross, a mutual insurance company that provides health insurance.  Plaintiff was hired as a Medicaid Customer Service

---

[9]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671).

[10]*Adams,* 233 F.3d at 1246.

[11]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[12]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[14]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Representative, and continued in that position for three months.  At that time, plaintiff voluntarily resigned her employment because she was experiencing abdominal pain.  A few months later, in April 2001, plaintiff was rehired by defendant in the same position.  Plaintiff continued working as a Customer Service Representative until 2002, when the Medicaid contract ended.  In June 2002, plaintiff was reclassified as a Provider Benefits Correspondent, and reported to Faye Starkbaum.

In July 2005, plaintiff sought and received a promotion to a position as a Provider Relations Hotline Representative.  Plaintiff's new supervisor was Cathy Holmes, who was an Internal Operations Manager.  Plaintiff's duties in this position included taking telephone calls from medical providers, helping them with coding issues, and issuing contracts to new providers. When plaintiff joined the Provider Relations Hotline group, there were six employees in the group.  Two of the employees were dedicated to assisting Tricare providers.  The other four employees in the group, including plaintiff, answered telephone calls and dealt with contract issues.  The work duties in the group were rotated on a monthly schedule, with two people assigned to answer calls and two working on provider contracts.  After answering calls for a month, an employee would be rotated to the contract tasks.  If an employee who was scheduled to answer calls was absent, a person assigned to work on contracts would have to switch over to call duty.

Throughout her employment with Blue Cross, no one at the company ever criticized plaintiff for using FMLA leave.  If plaintiff asked for FMLA leave forms, they were provided to her, and questions about her FMLA status were promptly answered.  When she had FMLA-related issues, plaintiff usually dealt with Andrea Williams in the Human Resources department,

4

who provided and processed FMLA paperwork and answered employees' questions regarding FMLA issues.  Williams responded promptly to plaintiff's FMLA-related requests and was never rude or unresponsive to her.

### 2002 FMLA Use

Plaintiff requested FMLA leave in April 2002 for treatment of abdominal pain. Defendant approved the leave.

Plaintiff requested FMLA leave in October 2002 for abdominal pain.  The Certification of Health Care Provider submitted by plaintiff indicated "None of the Above" in the section of the form where the provider describes how plaintiff was suffering from a "serious health condition;"  and the request for leave was denied.

Plaintiff became aware at some point that a request for FMLA leave was not approved until the FMLA administrator had designated it as being approved and that a request for leave could be denied.

In November 2002, plaintiff again requested FMLA leave for abdominal pain.  Plaintiff's physician certified the existence of a serious health condition, and defendant approved the leave request.

In December 2002, plaintiff requested FMLA leave for pregnancy-related appointments and maternity leave.  Defendant approved the request.

### Plaintiff's FMLA Use for 2004

Several years prior to her employment with defendant, plaintiff attempted suicide.  She began seeing Pat Herrera-Thomas, a social worker, off and on.  Plaintiff also began a regimen of

antidepressant medication, which she took in an irregular fashion.

In April 2004, plaintiff requested intermittent FMLA leave for treatment of major depression and anxiety.  According to the information submitted by plaintiff and her health care provider, the period during which the leave would be necessary was April 27 to June 27, 2004. The certification indicated that plaintiff was taking medication.  According to the health care provider who certified the leave request, plaintiff was not incapacitated but would need occasional leave for monthly counseling appointments over a period of two to four months. Defendant approved the leave request.

In July 2004, plaintiff requested FMLA leave for diabetes.  Defendant approved intermittent leave, as requested.

### FMLA Use in 2005 and 2006

In February 2005 plaintiff requested FMLA leave because one of her children had the flu. No health care provider's certification was submitted and defendant denied the request.

In June 2005, plaintiff sought FMLA leave for her diabetes.  Defendant approved the intermittent leave, as requested.

In April 2006, plaintiff requested FMLA leave for diabetes.  Defendant approved plaintiff to be off work from March 21, 2006 to April 3, 2006, and then thereafter as needed for intermittent follow-up appointments through June 20, 2006.  In April of 2006, plaintiff and Holmes had a discussion about plaintiff's depression and its effect of causing her to miss work.

### *Blue Cross Policy*

Plaintiff received a copy of defendant's handbook as a new employee.  The company policies were also available on the company's intranet, and plaintiff had access to company policies via her computer.

Defendant's company attendance policy, posted on the intranet, states:

> Employees must notify their supervisor/designee on <u>EACH</u> date they are absent, unless they have specifically indicated on the first day the number of days they will be absent (this includes employees on FMLA, STD, Workers Comp).  Employees who are absent for two (2) consecutive days without calling their supervisor/designee will be terminated. (emphasis in the original).

Holmes expected employees in her department to call in each day they were absent from work. If an employee was unable to call, it was sufficient for a spouse or other family member to notify Holmes.  Holmes testified that it would be acceptable if an employee called on Monday, and said they would call back on Thursday.  In that situation, Holmes said that she would expect a call on Thursday and would not initiate termination prior to that.

Defendant's FMLA information packet states that FMLA forms "should be submitted before the leave occurs, however, if the employee is not able to determine the need beforehand, the employee has 2 business days upon returning to work to submit the Request for Leave form."

### *Events Preceding Plaintiff's Termination*

Plaintiff was at work on Monday, May 8, 2006.  On Tuesday, May 9, plaintiff was absent from work.  She called in and left a voicemail message for Holmes, indicating that she had a sick child.  Plaintiff's child was not seen by a doctor, and did not receive any medical treatment.

On Wednesday, May 10, plaintiff was absent again.  She called in and left a voicemail message for Holmes, indicating only that she would be absent.  Plaintiff did not receive any treatment from a health care provider on May 10, nor did she speak to a provider by telephone.  Plaintiff did not contact Williams or anyone else at Blue Cross on May 10 indicating a need for FMLA leave.  Plaintiff claims that she became clinically depressed and physically unable to do anything during the very early hours of May 10, 2006.

On Thursday, May 11, plaintiff was absent again.  She called in at 7:00 a.m. and left a voicemail message for Holmes, indicating that she had a migraine headache, for which she had never previously requested FMLA leave.  That day, plaintiff emailed Williams and asked her to "interoffice" her the FMLA forms, and indicated that she would need FMLA leave for May 10 and May 11.  Plaintiff included Holmes as the carbon copy recipient of the email message, which did not describe any particular condition as the basis for the FMLA request.  Defendant has interoffice mail delivery between its employees, where information is hand-delivered from one employee to another.  Williams sent the FMLA packet to plaintiff's office via interoffice delivery on May 11.  Plaintiff did not receive any medical treatment on May 11.  Plaintiff telephoned her social worker, Herrera-Thomas, that day, but she was out of town.  Plaintiff did not attempt to receive treatment from another provider, but instead made an appointment to see Herrera-Thomas on Monday, May 15, 2006.

On Friday, May 12, plaintiff was absent from work.  Plaintiff left a voicemail message for Holmes, indicating that she would not be in that day, but hoped to be in on Monday (May 15).  Holmes was not in the office that day, as she was in Phoenix on business.  Plaintiff contends that she told Holmes that her condition was not improving and that she needed FMLA

leave for her absence that day.  Holmes denies that the plaintiff made such statement in her

voicemail message.  Plaintiff did not seek or receive any medical treatment that day, although

she testified that she took previously-prescribed antidepressant medication.  Later that day,

plaintiff sent  Holmes an email that stated:

> Cathy, I will be at work on Monday.  They changed my meds and
> put me on prozac. . . , took me off my other meds, obviously they
> weren't working.  I tried to call a couple times but just got your
> voice mail.  I am sorry about this week.  Right now, they want to
> see if they can get me straightened out with the medication.  I told
> them that I wasn't ready to be admitted.  That would just cause me
> more problems.

By "they," plaintiff testified that she meant her husband, her parents, and Herrera-Thomas.

Plaintiff testified that when she spoke to Herrera-Thomas on May 11, to try to make an

appointment, she asked plaintiff if she was taking her medication, and advised her to continue

taking her medications until she could see plaintiff.

On Monday, May 15, plaintiff was absent from work.  Plaintiff testified that she left

Holmes a voicemail at 7:10 a.m. indicating that her situation had not improved, that she had an

appointment that evening, that it would be another couple of days before she would be released

to return to work, and that she would call her later in the week, either Thursday or Friday, and let

her know for sure when she was going to be able to come back to work.  Plaintiff testified that,

as with her previous voicemails, she left Holmes her phone number and told her she could call

her at home.  Holmes testified that she received no such voicemail from plaintiff on May 15.

Holmes also acknowledged that her voicemail system occasionally loses calls.

At 8:01 a.m. on May 15, Holmes sent plaintiff an email that stated:

> Sorry to have missed your calls.  I was in Phoenix on Friday.  I do sympathize and understand what you are going through, however, you need to get back on track and do what you need to do to keep you there.  We need to talk as soon as you are back.  Take care of yourself and see you back at work soon.  Thanks.

Holmes' email to plaintiff has the preceding email from plaintiff at the bottom of the page and the same subject line reference.  Holmes testified that she was responding to plaintiff's email of May 12, not a voicemail from that morning.   She also testified that when she said she understood what plaintiff was going through, she meant that she understood plaintiff was going through "some difficult personal things with her family and with herself."  She testified that plaintiff told her she was taking antidepressant medication [prozac] and that she understood that plaintiff was suffering from a depression, but that she did not call plaintiff to find out the nature and extent of that depression.  In fact, Holmes believed that Williams or Tonya Fuller from Human Resources was going to contact plaintiff to ascertain her medical status.  Plaintiff saw Herrera-Thomas for a therapy session on the evening of May 15.

On Tuesday, May 16, plaintiff was absent from work.  Plaintiff admits that she made no contact with Holmes that day, but that Darci Barrett had delivered the FMLA forms to plaintiff at home the evening of May 15.  Holmes reported the no call/no show to Human Resources and to her supervisor, Fred Boston.  Williams's notes indicate that on May 16, 2006, plaintiff had the FMLA forms, that Darci took them to plaintiff the night before, and that plaintiff was going to the doctor the next day.

On Wednesday, May 17, plaintiff was absent from work.  She made no contact with Holmes that day.  Plaintiff saw Herrera-Thomas for a therapy session either that day or the next.

On Thursday, May 18, plaintiff was absent from work.  She did not call Holmes prior to the start of her shift that day.  Holmes contacted the Human Resources department via email at 10:56 a.m., sending a draft of a termination letter to plaintiff.  Plaintiff emailed Holmes at 4:10 p.m. on May 18, stating,

> Cathy, I will be back to work on Monday (if that's still ok ?!?!?!)
> My doctor has all my FMLA papers, so they should be in next
> week also.  Will you be in on Monday?

Holmes responded by email at 4:57 p.m., stating "Please contact HR."  The letter informing plaintiff of her termination was sent via certified mail on May 18, 2006.  On May 18, 2006, Holmes entered plaintiff's time sheet on the computer to reflect that on May 15, 2006, plaintiff was "off, using PTO (paid time off)."

The next day, May 19, plaintiff telephoned the Human Resources department.  Fuller informed plaintiff that she would be receiving a letter informing her that she was terminated due to her failure to notify her supervisor of her absence for two consecutive days.  Plaintiff received the certified letter on May 20, 2006, informing her of her termination, effective May 18, 2006.  The letter reiterated defendant's policy stating that employees who do not inform their supervisor of absences on two or more consecutive days will be terminated.

Plaintiff visited Herrera-Thomas on May 23, 2006.  Plaintiff reported great improvement, as well as her plans to seek a part-time job at the Veterans Administration Hospital.  Herrera-Thomas's treatment notes indicate that she completed the FMLA form for plaintiff during the May 23, 2006 visit.

Defendant contends that it received plaintiff's FMLA leave request forms on May 23,

2006, and that it did not respond as plaintiff had been terminated five days earlier.  Plaintiff testified that she mailed the request for leave on either May 15 or 16, 2006.  Williams testified that the form was received on May 23, 2006.  The form indicates that plaintiff signed and dated it on May 16, 2006, but Hererra-Thomas's signature date is May 23, 2006.  Hererra-Thomas certified that plaintiff was suffering from a serious medical condition, specifically depression, and indicated she needed leave from May 9, 2006 to approximately May 23, 2006, for intensive outpatient therapy and possible in-patient admission, date yet to be determined.

Holmes testified that plaintiff knew her department was busy during this time period and that her co-workers were impacted by her absence.  Holmes further testified that plaintiff, as well as the whole department, knew that Holmes had advised her staff that no additional vacation would be approved during that period because they had a new system to put in and she needed everyone there to do that.

## III.    Discussion

The FMLA entitles a qualified employee to up to twelve weeks of leave during any twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[15]  In addition to the leave, an eligible employee is entitled to be restored to the same or an equivalent position upon return from leave.[16]

Plaintiff asserts her FMLA claims under two theories: (1) interference under § 2615(a)(1)

---

[15]29 U.S.C. § 2612(a)(1)(D).

[16]*Id.* § 2614(a)(1)(A)-(B).

of the FMLA, and (2) retaliation under § 2615(a)(2) of the FMLA.  The Court discusses each in turn.

### A.      Interference/Entitlement

Under this theory, plaintiff has the burden to show entitlement to FMLA leave, but need not show the employer's intent to interfere with FMLA leave.[17]  Under the interference theory, if an employer interferes with an employee's FMLA-created right to a medical leave, it has violated the FMLA, regardless of its intent.[18]  In such a case, the employee must demonstrate her entitlement to the disputed leave.[19]  The intent of the employer is immaterial.[20]

### *Notice*

Defendant argues that plaintiff is not entitled to FMLA leave because she failed to give her employer notice.  Conversely, plaintiff contends that she gave defendant appropriate notice of her serious health condition.  "The analysis of improper notice under the FMLA is separate from the analysis of the substantive claim that an employer interfered with the exercise of an employee's FMLA rights."[21]  An employee should give notice to the employer of the need for FMLA leave within thirty days if the need for leave is foreseeable, or as soon as practicable if the

---

[17]*See id.*  § 2612(a)(1)(D).

[18]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[19]*Id.*

[20]*Id.*

[21]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 n.2 (10th Cir. 2004) (citing *Smith,* 298 F.3d at 960–61 (explaining notice is not part of the analysis set out by the court for determining interference with one's FMLA rights); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir. 2001) (assuming employee proffered adequate notice to invoke FMLA protection, then proceeding to analyze substantive FMLA interference claim)).

need for leave is unforeseeable.[22]  However, the FMLA does not require a covered employee to specifically ask for FMLA benefits.[23]  In fact, an employee need not expressly assert rights under the FMLA or even mention the FMLA.[24]  "If the employer is on notice that the employee might qualify for FMLA benefits, the employer has a duty to notify the employee that FMLA coverage may apply."[25]  An employer is then expected to obtain any additional required information through informal means.[26]

Based on the record before it, the Court finds that material issues of fact remain as to whether plaintiff provided notice of her need for FMLA leave to defendant.  It is undisputed that plaintiff called into work on May 10, 11 and 12.  It is also undisputed that plaintiff requested and was delivered FMLA forms and that no one at Blue Cross contacted her to make further inquiries about her status.  It is disputed whether plaintiff relayed that she needed FMLA leave or that she was suffering from a serious medical condition.  It is also disputed whether plaintiff left Holmes a voicemail on May 15 about her need for leave and when she would call in later in the week.  These factual issues and disputes surrounding the steps plaintiff took to provide notice preclude the entry of summary judgment.

### Prima Facie Case

Alternatively, defendant argues that even if the Court assumes plaintiff makes a case for

---

[22]29 C.F.R. §§ 825.302(a), 825.303(a).

[23]*Tate v. Farmland Indus.,*268 F.3d 989, 997 (10th Cir. 2001).

[24]*Id.* (citing 29 C.F.R. §§ 825.302(c), 825.303(b); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 761–64 (5th Cir. 1995)).

[25]*Id.* (citing 29 C.F.R. § 825.208(a)).

[26]29 C.F.R. § 825.330.

notice, plaintiff has failed to state a prima facie case.  A prima facie case of interference requires a showing that: (1) plaintiff was entitled to FMLA leave; (2) that an adverse action by the employer interfered with plaintiff's right to take FMLA leave; and (3) that the employer's adverse action was related to the exercise or attempted exercise of plaintiff's FMLA rights.[27]  Nonetheless, even when an employee requests and can demonstrate an entitlement to FMLA leave, she has no greater rights than the employee who continues to report to work.[28]  Thus, an employee may be terminated, even where the termination interferes with her ability to take FMLA leave, so long as she would have been terminated regardless of her leave request.[29]  The burden to demonstrate that "an employee, laid off during FMLA leave, would have been dismissed regardless of the employee's request for, or taking of, FMLA leave" is on the defendant-employer."[30]

Defendant contends that plaintiff was not entitled to FMLA leave because she not only failed to give the required notice, but actively misled defendant as to the status of her health.  As previously discussed, the issue of notice involves disputed questions of material fact.  Moreover, Herrera-Thomas certified that plaintiff was suffering from a serious medical condition related to her depression, and Holmes testified that she was aware that plaintiff was taking antidepressants and understood that she was suffering from depression.  Whether or not plaintiff misled defendant about her condition also involves a disputed issue of material fact.

---

[27] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

[28] *See Gunnell v. Utah State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

[29] *See id.*

[30] *Metzler*, 464 F.3d at 1180 (citation omitted); *see also* 29 C.F.R. § 825.216(a) ("An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.").

Defendant further contends that it did not deny plaintiff a substantive right under the FMLA.  In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full twelve weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.[31]  Plaintiff contends that she was denied the substantive right of reinstatement.[32]  Defendant counters that the right to reinstatement never accrued because plaintiff was not on FMLA leave.  As noted above, there is jury question regarding whether plaintiff was eligible for FMLA leave.  If, in fact, plaintiff was entitled to leave, by terminating plaintiff's employment, defendant denied her the right to be reinstated to her former position upon her return to work, thereby establishing the second element of plaintiff's prima facie interference claim.[33]

Finally, defendant argues that plaintiff cannot prove the third element of her prima facie case since she was terminated because she did not call in to report her absences on two or more consecutive work days, and that the FMLA does not exempt employees from compliance with the employer's attendance and reporting requirements.[34]  The Tenth Circuit has held that a reason for dismissal insufficiently related to FMLA leave will not support recovery under an interference

---

[31]*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (citation omitted).

[32]Alternatively, plaintiff argues that defendant interfered with the previously granted intermittent leave for follow-up treatment of diabetes through June 20, 2006.  Plaintiff argues in her motion for summary judgment that because she was terminated in May 2006, while she was approved for FMLA leave to deal with a serious health condition, she is entitled to summary judgment on this claim.  Defendant fails to respond to this claim in its response to plaintiff's motion for summary judgment, although it does address the issue in its reply to plaintiff's response to plaintiff's motion for summary judgment.  Plaintiff fails to cite any authority for her position that, although she was not suffering from diabetes-related issues, she was authorized to use her gallstone-related intermittent leave approval in the context of her request for FMLA leave related to her depression.  Thus, the Court denies plaintiff's motion for summary judgment to the extent it includes this alternative interference claim.

[33]*Metzler,* 464 F.3d at 1180-81.

[34]*See, e.g., Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869 (10th Cir. 2004).

theory.[35]  Plaintiff contends that a causal connection exists because she would not have been dismissed had she not attempted to take FMLA leave.  As noted previously in the discussion on notice, however, it remains a material issue of fact whether plaintiff left a voicemail with Holmes the morning of May 15, which stated that she would call back on Thursday or Friday to let her know how she was doing.  Likewise, the evidence regarding whether plaintiff would have been terminated regardless of her FMLA request is far from undisputed.  Based on these disputed issues of material fact, the Court declines to grant either party's motion for summary judgment on the entitlement claim.

### B.    Discrimination/Retaliation

Plaintiff contends that she suffered unlawful retaliation because she was terminated. Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[36]  Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation.[37]  If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action.[38]  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.[39]

---

[35]*Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002).

[36]*Metzler*, 464 F.3d at 1170 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[37]*Id.*

[38]*Id.*

[39]*Id.*; *see also Gunnell v. Utah State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (explaining that plaintiff has the ultimate burden of demonstrating that the challenged employment decision was the result of intentional retaliation).

**Prima Facie Case**

To state a prima facie case of retaliation, plaintiff must show that: (1) she engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.[40]  Defendant does not dispute that plaintiff's request for FMLA forms constituted protected activity or that termination is an adverse employment action.  Thus, the Court addresses whether plaintiff has met the third element, the requisite causal connection.

To establish the third element of a prima facie case of retaliation, plaintiff must show a causal connection between her protected activity of taking FMLA leave and defendant's decision to terminate her employment.[41]  The "critical inquiry" at this prima facie stage is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination."[42]  The Tenth Circuit has long-recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to "justify an inference of retaliatory motive."[43]  The court has also emphasized, however, that a plaintiff may rely on temporal proximity alone only if "the termination is *very closely* connected in time to the protected activity."[44]

Here, the record indicates that plaintiff's termination occurred within days of her initial

---

[40]*Metzler*, 464 F.3d at 1171 (citation omitted).

[41]*Id.*

[42]*Id.* (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (quotations omitted)).

[43]*Id.* (citing *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006)).

[44]*Id.* (quoting *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999) (emphasis in original)).

request for FMLA leave and forms.  Because her termination was therefore "very closely connected in time" to her protected FMLA activity, the Court finds that she has established the third element of her prima facie case.

### Legitimate, Nonretaliatory Reason for Termination

Having established her prima facie case, the burden under *McDonnell Douglas* shifts to defendant to demonstrate a legitimate, nonretaliatory reason for its termination decision.[45] Defendant asserts that it terminated plaintiff due to her failure to adhere to the company policy requiring employees to notify their supervisor each day they are absent from work.  The Court finds that defendant has articulated a legitimate, nonretaliatory reason for terminating plaintiff's employment.

### Pretext

To defeat summary judgment, plaintiff must show that there is a genuine dispute of material fact as to whether defendant's explanations for terminating her employment are pretextual.[46]  To raise a fact issue of pretext, plaintiff must present evidence of temporal proximity plus circumstantial evidence of retaliatory motive.[47]  A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[48]  While this burden is not onerous . . . it is also not

---

[45]*Id.* (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003)).

[46]*Id.* (citing *Mickelson v. New York Life Ins. Co.* 460 F.3d 1304, 1318 (10th Cir. 2006)).

[47]*Id.* (citing *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206-07 (10th Cir. 2000)).

[48]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

empty or perfunctory."[49]  A plaintiff typically makes a showing of pretext in one of three ways:
(1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.*
unworthy of belief; (2) evidence that defendant acted contrary to a written company policy
prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted
contrary to an unwritten policy or contrary to company practice when making the adverse
employment decision affecting plaintiff.[50]

In this case, plaintiff relies on the following pieces of circumstantial evidence to
demonstrate pretext: (1) plaintiff left a voicemail message for Holmes the morning of May 15,
2006, stating that leave was needed and that she would call back on Thursday or Friday, and
Holmes's testimony that under such circumstances, she would not take action to terminate an
employee; (2) Holmes's email to plaintiff on May 15, stating that she understood, and that she
would see plaintiff back at work soon;  (3) plaintiff's assertion that she mailed her FMLA leave
request forms on May 15 or 16, and the failure of defendant to produce a legible date-stamped
copy; (4) defendant did not follow written policy under FMLA because she was incapacitated and
thus permitted two days after her return to work to return her FMLA leave request forms; (5)
plaintiff's record of good job performance and attendance; (6) Holmes's testimony that all staff
was needed to implement system changes and that no vacation would be allowed; and (7) other
employees were not terminated for failure to report absences.  Defendant disputes plaintiff's
factual contentions.

Because plaintiff has not provided an affidavit authenticating the documents pertaining to

---

[49]*Id*. at 1323-24.

[50]*Kendrick v. Penske Transp. Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

other employees to whom plaintiff intends to compare herself, the Court does not consider these statements or documents in determining this summary judgment motion.[51]  The Court also disregards plaintiff's assertion that she mailed the FMLA forms prior to the date they were delivered and prior to the date Hererra-Thomas completed the forms.  Plaintiff's other evidence, however, coupled with the close temporal proximity of her termination, is sufficient to raise a fact issue of pretext.  Summary judgment on plaintiff's retaliation claim is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's motion for summary judgment on her entitlement claim (Doc. 77) is DENIED.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment on plaintiff's entitlement and retaliation claims (Doc. 81) is DENIED.

IT IS SO ORDERED.

Dated this 11th day of February 2008.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[51]*See Bell v. City of Topeka*, 496 F. Supp. 2d 1182, 2284-85 (D. Kan. 2007).